UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

HUMBERTO ANTONIO ROCA LEIGUE,
an individual,

   Plaintiff,

vs.

ESTADO PLURINACIONAL DE BOLIVIA f/k/a LA
REPÚBLICA DE BOLIVIA, COMPAÑÍA BOLIVIANA
DE TRANSPORTE AEREO, S.A. a/k/a AEROSUR,
SERGIO SANZETENEA, an individual, DAVID AÑEZ
ALI, an individual, and ALVARO GARCIA LINERA, an
individual,

   Defendants.

_____/

## VERIFIED COMPLAINT

   Plaintiff Humberto Antonio Roca Leigue ("Roca"), sues Defendants Estado Plurinacional

de Bolivia f/k/a La República de Bolivia, Compañía Boliviana de Transporte Aereo, a/k/a

Aerosur ("Aerosur"), Sergio Sanzetenea ("Sanzetenea"), David Añez Ali ("Añez"), Alvaro

Garcia Linera ("Garcia Linera") (collectively, the "Defendants"), and alleges as follows:

## INTRODUCTION

   Sometimes in this country, we take for granted just how important it is to have a

government that respects the rights of its citizens, follows the rule of law and that has an

independent judiciary to step in if for some reason the government overreaches its legitimate

power.  The Plaintiff in this case, Humberto Roca, sadly does not have that luxury.   His only

alleged "sin" is that he spoke openly and publicly in Bolivia, asking that the government end its

culture of corruption, create clear rules of law to be applied equally to all its citizens, not

interfere in private businesses, and that it not unfairly compete with one of its largest and most respected corporate citizens.   To us in this country, these statements are an everyday occurrence – indeed we have an entire "Occupy" movement that has been in the news almost daily making even stronger pronouncements.   These protesters are lauded and praised for being engaged and for speaking their beliefs.   Mr. Roca has had a much different experience.   For speaking his mind, the government of Bolivia has effectively stripped him of his citizenship, has denied him even his basic human rights, has trumped up criminal charges against him, and has entered into a conspiracy with individuals (including family members and a trusted lawyer) in order to expropriate Roca's assets – including a 51% controlling interest in an airline worth tens of millions of dollars.

## THE PARTIES

1.      Plaintiff Humberto Antonio Roca Leigue fled Bolivia after the government of Evo Morales stripped him of his citizenship rights.   He resides in Miami-Dade County, Florida and has petitioned for political asylum in the United States.   Prior to fleeing Bolivia and before the illegal expropriation that is the subject of this lawsuit, Humberto Roca was the President of Aerosur, S.A..   Until the illegal expropriation at issue here, Aerosur was one of Bolivia's most profitable private companies.   Additionally, Humberto Roca is also a prominent political figure in Bolivia who has made it his personal mission to call the government of Evo Morales to task for its rampant corruption.   Several years ago, Humberto Roca launched a media campaign under the banner "Reglas Claras," or "Clear Rules."   The campaign's mission is simple – to force the government to play by a single, transparent set of rules that apply equally to all Bolivian citizens, regardless of their station in life.   Humberto Roca's efforts to battle public corruption are at the heart of the illegal expropriation in this lawsuit.

2.      Defendant Estado Plurinacional de Bolivia, f/k/a La República de Bolivia, is a "foreign state" within the meaning of 28 U.S.C. § 1603.

3.      Defendant Aerosur is a commercial air carrier incorporated under the laws of Bolivia in 1992.  Until his shares in the company were illegally expropriated, Humberto Roca served as Aerosur's President.

4.      Defendant Sergio Sanzetenea is an individual who is *sui juris*.  Sanzetenea is an agent of Defendant Bolivia has played a leading role in the government-led conspiracy to expropriate Humberto Roca's ownership interest in Aerosur.  Sadly, Sanzetenea is also Humberto Roca's stepbrother.  As one of Roca's last official acts as President of Aerosur, he fired Sergio Sanzetenea from his job as Regional Vice President of Aerosur Buenos Aires, due to his activities transporting undeclared monies in cash inside the planes of Aerosur from Bolivia to Argentina.

5.      Defendant David Añez Ali is an individual who is *sui juris*.  Añez serves as Aerosur's general counsel and is a member of the government-led conspiracy that has expropriated Humberto Roca's ownership interest in Aerosur.

6.      Defendant Alvaro Garcia Linera is an individual who is *sui juris*.  Garcia Linera is Bolivia's Vice-President and a member of the government-led conspiracy that has illegally expropriated Humberto Roca's ownership interest in Aerosur.  Before becoming the Vice-President, Garcia Linera was incarcerated for eight years for terrorism-related charges.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Defendant Estado Plurinacional de Bolivia pursuant 28 U.S.C. § 1330(a), because Defendant Bolivia is not entitled to immunity under federal law or any applicable international agreement.

3

8.     This Court further has subject matter jurisdiction over Defendant Bolivia under 28 U.S.C. § 1605(a)(3) because, as further detailed below, Defendant Bolivia has expropriated Humberto Roca's majority ownership interest in Aerosur in violation of international law.

9.     Following the expropriation of the majority of its shares, Aerosur has become an agency or instrumentality of Bolivia because, as defined in 28 U.S.C. §1603(b)(2), a majority of its shares are now owned by a foreign state or political subdivision thereof.

10.     Defendant Aerosur engages in commercial activity in the United States as provided by 28 U.S.C. § 1605(a)(3).   Aerosur offers passenger service from Bolivia to destinations in the United States.[1]   Moreover, Aerosur's mission is to make Bolivia a hub for air traffic between North and South America.[2]   Aerosur has been in operation since 1992, and has approximately 8 operating aircrafts and 2 in maintenance in its fleet.   It services 16 cities around the world, carrying approximate 1,500 passengers per year, resulting in income of over $200 million in 2010.

11.     This Court has jurisdiction over this cause as to the individual defendants pursuant to 28 U.S.C. § 1332.

12.     Moreover, this Court possesses supplemental jurisdiction over Roca's additional claims pursuant to 28 U.S.C. § 1367(a).

13.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(3) and (f)(3).

## GENERAL ALLEGATIONS

### Bolivia Under President Evo Morales

14.     In 2006, Evo Morales became President of Bolivia, ushering in an era of totalitarian, single-party rule.   Nearly five years after his rise to power, Evo Morales' Bolivia is

---

[1]     http://www.aerosur.com/en/index.php?cat=169&pla=1 (last visited on December 1, 2011)
[2]     http://www.aerosur.com/en/index.php?cat=168&pla=1 (last visited on December 1, 2011)

4

marked by regional, social, ethnic, and ideological divisions which have been deepened, if not created, by his own government's policies.

15.     A report issued by the U.S. Department of State in 2010 described numerous human rights violations in Bolivia, including "killings and torture by security forces; harsh prison conditions; allegations of arbitrary arrest and detention; an ineffective, overburdened, and corrupt judiciary; a 'partly free' media; corruption and lack of transparency in the government; trafficking in persons . . ."  *See* Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Bolivia Country Reports on Human Rights Practices* (April 8, 2011),  attached as Exhibit "A", p.1.

16.     Beyond these abuses, President Morales has splintered Bolivian society along ethnic and geographic lines.  There is a pronounced hatred today between indigenous and non-indigenous peoples, between citizens of Bolivia's eastern and western regions, and between those who live in cities, and those who reside in the more remote parts of the country.  These divisions are exacerbated, if not encouraged, by Evo Morales' administration.  In addition, President Evo Morales has reduced the freedom of the press to nothing.  He believes that the media is the government's "largest opposition."  *Id.* at p. 6.

17.     The Bolivian constitution outlines the concept of "indigenous justice" (or "community justice"), which has led to violent deaths.  This community or indigenous justice consists of many indigenous people enforcing the "law" in the absence of an effective police, especially in the cities of El Alto and Santa Cruz.  *Id.* at p. 1.  As a consequence, Bolivia's indigenous people are now viewed as confrontational and violent promoters of ethnic aggressiveness.

18.     Today, Bolivia is considered one of the most corrupt and arbitrary governments in

Latin America. Although torture is prohibited under Bolivia's Constitution, there are many reports of torture committed by the Bolivian National Police. *Id.* at p. 2. Prisons are overcrowded, dangerous, and in poor condition. *Id.* at p. 3.

19. Bolivia's justice system is no better. Amnesty International notes "the pervasive culture of impunity and the widespread lack of trust in the justice system." *Id.* at p. 5. Under President Evo Morales, Bolivia's justice system has become completely politicized. *Id.*

20. Ultimately, President Evo Morales has set out to "put an end to the capitalist system." [3] As a vocal opponent of President of Evo Morales, as a man who has devoted himself to the public fight against fraud and corruption at the highest level of government, and as a prominent capitalist himself, Plaintiff Humberto Roca has become a prime target for retaliation and abuse by the Government of Bolivia.

***Humberto Roca Becomes The Majority Owner Of Aerosur***

21. From 1992 until the time when the expropriation alleged in this lawsuit occurred, Humberto Roca was a director of Aerosur. From 2001 until the expropriation, Humberto Roca was also the President of Aerosur. In fact, Humberto Roca currently is the owner (directly and indirectly) of 77% of the company's voting stock. As further detailed below, part of these shares are held indirectly by a custodian, as a result of estate planning and other steps Humberto Roca took to protect his stock in Aerosur. Little did he know that the Bolivian government would later turn those same protection plans against him in order to expropriate the share.

22. Prior to the illegal expropriation at issue here, Humberto Roca, the majority shareholder of Aerosur, suffered two heart attacks. A history of heart disease runs in Humberto Roca's family. In fact, Humberto Roca has already undergone a complex coronary surgical

---

[3]   *See World Socialist Party,* Evo Morales: A Call for Socialism? Stephen Shenfield, June 28, 2008. Available at http://wspus.org/2008/06/evo-morales-a-call-for-socialism/ (last visited on November 30, 2011).

procedure in Miami, Florida.  Given the history of heart disease in his family and his own physical condition, Humberto Roca decided at an early point to do everything he could to safeguard his assets for his children's future.

23.     In 1998, Humberto Roca acquired 51% of the shares of Aerosur through his stepbrother and confident Sergio Sanzetenea.  Aside from the fact that the two men had a very close personal and familial relationship, Humberto Roca obtained the shares in his stepbrother's name as part of an asset protection plan conceived to protect his assets for the benefit of his children.

24.     As proof that Humberto Roca, and not Sanzetenea, was the ultimate beneficial owner of the majority shares of Aerosur, Humberto Roca's attorney, Defendant Añez, drafted an agreement between Humberto Roca and Sanzetenea.  Upon information and belief, this agreement has been destroyed.  The agreement memorialized Humberto Roca's true ownership. The parties also agreed that Sanzetenea and Añez would turn over the shares upon demand by Roca.

25.     Humberto Roca has demanded that his shares be returned, and Añez and Sanzetenea have refused to comply.

26.     Humberto Roca not only owns 51% of Aerosur through Sergio Sanzetenea.  He also owns 7% under his own name, and 19% under Hubair, a Bahamian company of which Roca is 100% owner.  Thus, Roca is the rightful owner of 77% of Aerosur.

27.     Thanks to Roca's contributions and management after becoming President of the company in 2011, Aerosur reached a level of commercial success to where it is responsible for 1.5% of Bolivia's gross domestic product.

***Roca's Political Campaign***

28.     As part of a broader plan to have the state exercise control over all aspects of Bolivia's economy – including the aviation industry – President Evo Morales established Boliviana de Aviacion ("BOA") in 2007.  This state-sponsored and supported airline began serving passengers in March 2009.

29.     BOA and AeroSur were soon locked in bitter competition.  Aerosur, through Humberto Roca, denounced Bolivia's role in heavily subsidizing BOA.  Bolivia's Vice-President, Garcia Linera, demanded that Aerosur improve its fleet of aircrafts and stop risking passengers' lives by using old and unsafe airplanes.  Garcia Linera's criticisms of Aerosur's fleet were factually wrong.  But, they were nevertheless understandable given his public statements that "no private company can compete with the Government."  *See* video attached as Exhibit VID-1.[4]

30.     In the war of words that followed, Humberto Roca strongly criticized President Morales' government.  Through his movement, "Reglas Claras," or "Clear Rules," Humberto Roca publicly denounced political corruption at all levels of Bolivia's government and questioned the government's real motives in competing against a successful airline in a market that did not need or have the capacity to sustain another commercial airline. *See* video attached as Exhibit VID-2.

***The Bolivian Government Retaliates***

31.     As Humberto Roca became more vocal, the government feared that he might present a formidable challenge to President Evo Morales.  To protect his grip on power, Evo Morales and his political hit men set out to destroy Humberto Roca.  Bolivia's Minister of Institutional Transparency filed criminal charges against Humberto Roca for contempt and Illicit

---

[4]     All exhibits labeled "VID-#" consist of video recordings that will be filed physically due to their format following the electronic filing of this complaint.

Enrichment of Individuals to the Detriment of the State.  *See* Formal Charges for Contempt attached as Exhibit "B"; *see also* Formal Charges for Illicit Enrichment of Individuals to the Detriment of the State, attached as Exhibit "C."  The contempt charges were based on Humberto Roca's statements accusing the government of theft and corruption, while the unjust enrichment charge arose out of Humberto Roca's ownership of various luxury cars and other property.  *Id.* Both sets of charges were groundless and merely designed to further the government's scheme to silence Humberto Roca.

32.    Both complaints were based upon two newly enacted laws that provided harsher penalties for certain crimes: the law against illicit enrichment of public officials and the law against illegal enrichment of private individuals with public funds.  These laws were deemed retroactive despite the fact that they provided for harsher penalties.  This contravenes the basic principle of international law that no one shall be subject to a heavier penalty than the one applicable at the time an alleged crime was committed.

33.    Bolivia alleged that Humberto Roca had violated these laws.  Yet, Humberto Roca is not a public official.  Moreover, Humberto Roca did not deal with public funds since, prior to the illegal expropriation alleged here, Aerosur was a private company.  Notwithstanding, the government considered that Humberto Roca's assets "disproportionately increased his wealth regarding the income he could have received as president of an airline." *Id.*

34.    As a result of these false charges, Humberto Roca's assets in Bolivia have been frozen and seized.  Specifically, the government has seized more than 390 properties, companies, and more than 60 vehicles in Humberto Roca's name and in the names of his family members.

35.    To defend his name and reputation, in July 2010, Humberto Roca took the extraordinary step of suing Bolivia's Vice-President.  In his lawsuit, Humberto Roca charged

Garcia Linares with defamation and slander for comments made about Humberto Roca's personal assets.  *See Roca announces defamation lawsuit against the Vice-President,* ECONOMIA, attached as Exhibit "D."  Once again, Garcia Linares went on the attack.  He accused Humberto Roca of trying "to build a political castle with his company."  *See The Vice-President responded forcefully to Roca's insults*, ECONOMIA, attached as Exhibit "E."  The Vice President derided Humberto Roca as little more than a "spoiled capitalist." *Id.*  And, he warned that "sooner or later we will respond forcefully to [Humberto Roca's] insults." *Id.*  The threat of imminent arrest now hung over Humberto Roca's head on a daily basis.

36.    Humberto Roca and his family were under constant surveillance by the government.  White vans circled the family home in Santa Cruz, Bolivia at all hours of the day.  All of Humberto Roca's family members received constant threats telling them that Humberto Roca would be put in jail.  The harassment was such that Humberto Roca's neighbors – fearing for his safety – organized a plan to protect Humberto Roca and his family. These efforts were joined by Humberto Roca's supporters who went so far as to camp out outside of Humberto Roca's house for days in an effort to block the government's campaign of psychological terror.

37.    Although Humberto Roca's domicile is in Santa Cruz, both the contempt and unjust enrichment actions were filed in the capital, La Paz.  Humberto Roca fought incessantly not only to dismiss the complaints, but to have the proceedings transferred to Santa Cruz. Humberto Roca repeatedly argued – to no avail – that he suffers from serious medical conditions, including coronary artery disease, hypertension, hyperlipidemia, thyroiditis, and kidney cancer. *See* Clinical and Interventional Cardiology Letter from Baptist Hospital, dated February 22, 2011, attached as Exhibit "F."  These conditions were especially aggravated by the fact that La Paz sits 13,000 feet above sea level, in sharp contrast to Santa Cruz, which is only 1,300 feet

above sea level.

38.     To poison the public against Humberto Roca, government officials accused him of racism against indigenous people.  This angered indigenous groups, who publicly threatened to punish Humberto Roca for his purported insults.  This meant that Humberto Roca would be exposed to violent "community justice" without his day in court.

39.     Fearing for his health and safety, Humberto Roca fled Bolivia on November 28, 2010.  From his home he traveled to Brazil and then to Spain, where he received treatment for his cancer.  From Spain, Humberto Roca travelled to the United States where he underwent a complex coronary surgical procedure.

40.     Unable to assert his basic human rights as a citizen of Bolivia, and threatened with more "forceful" action by the government, on July 6, 2011, Humberto Roca filed an Application for Asylum in the United States.   The application remains pending.[5]

***Bolivia Strips Roca of His Citizenship And Falsely Accuses Him of Criminal Conduct.***

41.     As a prelude to the illegal expropriation charged here, Defendant Bolivia launched its own campaign against Humberto Roca.  To silence him, Defendant Bolivia abused its state powers to strip Humberto Roca of his rights as a citizen of Bolivia, freeze his assets, and falsely accuse him of criminal conduct.

42.     Specifically, and without limitation, Humberto Roca has been deprived of his citizenship rights, namely:

      a.   the right to travel freely beyond the national borders of Bolivia to other

            countries and return to Bolivia;

---

[5]     Not content to have effectively stripped him of his Bolivian citizenship, upon information and belief the Bolivian government has attempted to interfere with Humbero Roca's asylum petition.   Indeed, it is believed that Bolivia has informed the U.S. government that Humberto Roca is on their list of top 5 persons that Bolivia wishes extradited back to Bolivia.   However, the only criminal allegations against him are for alleged violations of laws that facially do not apply to Humberto Roca.

b.  the right to live in a non-incarcerated state in Bolivia;

c.  the right to access an independent and impartial judiciary;

d.  the right to due process;

e.  the right to acquire property;

f.  the right to sell property;

g.  the right to convey property;

h.  the right of ownership of any assets;

i.  the right to speak freely;

j.  the right to seek the assistance of the Bolivian diplomatic corps at consulate or embassy levels anywhere in the world; and

k.  the right to receive services or protection from Bolivia.

43.    Bolivia's President, Evo Morales, and his Vice-President Garcia Linera reacted to Humberto Roca's demands for greater government accountability in a fashion typical of a totalitarian government.  They threatened Humberto Roca and then perverted the country's legal system into an instrument to take action against him.  For exercising his right of free speech in challenging the government, Humberto Roca has been charged with crimes he could not have committed as the laws in question were inapplicable to him.

44.    On January 18, 2011, a Bolivian judge issued an arrest warrant for Humberto Roca.  Although Humberto Roca is challenging the validity of the arrest warrant, he faces an uncertain future.  Any country that does not recognize the sham that has been perpetrated here could arrest Humberto Roca and return him to Bolivia.

45.    Perhaps showing the real motives of the Bolivian government, they have used these false allegations to freeze Humberto Roca's assets in Bolivia, all as part of a scheme to

12

expropriate those assets.

**_The Expropriation Of Roca's Ownership Interest In Aerosur._**

46.    Not satisfied with exiling one of its most vocal critics, Defendant Bolivia has continued its campaign of retaliation.  Together with the various co-conspirators named in this lawsuit, Defendant Bolivia has illegally expropriated Humberto Roca's ownership interest in Aerosur.

47.    Upon information and belief, Bolivia's Vice-President, Defendant Garcia Linera, has ordered Defendants Sanzetenea and Añez to illegally convert Humberto Roca's 51% ownership stake in Aerosur.  To ensure that his fellow co-conspirators would do his bidding – and in a blatant abuse of his office – Garcia Linera threatened to have Sanzetenea and Añez named as co-defendants in the already pending criminal cases against Humberto Roca.

48.    In fact, a group of Spanish lawyers representing Humberto Roca traveled to Santa Cruz from November 18 to 21, 2011.  The purpose of their trip was to meet with Añez, Saznetenea, and other employees of Aerosur in the hopes of abating the constant fights between them and Humberto Roca.

49.    During a November 20, 2011 meeting between the Spanish lawyers, Sanzetenea and Añez, the Bolivian government's goal of expropriating Humberto Roca's assets was confirmed.  Añez explained that Aerosur would file a complaint against Humberto Roca in order to satisfy the government's bloodlust, and thereby reduce the government's threats and pressures against Aerosur and its remaining executives, directors, and shareholders.  During the November 21, 2011 meeting, Sanzetenea suggested that Humberto Roca assume responsibility for all company decisions and falsely state that he misappropriated company funds.  In this way, Humberto Roca would be able to take the pressure off the company and its employees.

50.     Sanzetenea's suggestion was, to say the least, odd.   Knowing full well that no money was taken, he was asking Humberto Roca to admit to a crime he did not commit.   It is now clear that Sanzetenea is an active participant in a conspiracy led by the Bolivian government and its officials to strip Humberto Roca of his ownership in Aerosur.

51.     Previously, in January 2011, Humberto Roca had demanded that Sanzetenea and Añez return his shares in Aerosur.  Sanzetenea and Añez refused to do so.  Humberto Roca then asked Añez to travel to the United States to resolve any disputes between them.  Añez refused that as well.  In light of this scenario, Humberto Roca appointed Abdalah Daher as the manager of Aerosur.  On learning of Daher's appointment, Sanzetnea informed Humberto Roca that he would never return any of his shares.

52.     At the time, there was no apparent reason for Humberto Roca's stepbrother and longtime attorney to refuse to abide by the clear terms of their prior agreement and also refuse to return what was rightfully his.

53.     In subsequent months, however, the answer has become apparent – they refused to do so because Sanzetenea and Añez were already plotting to assist the Bolivian government in illegally expropriating Humberto Roca's  interest in Aerosur.

54.     Although the expropriation of Humberto Roca's ownership interest in Aerosur is complete, the Defendants must still contend with the fact that under the last corporate action in effect, Humberto Roca remains the President of Aerosur.  Obviously, having Humberto Roca as President of Aerosur does not sit well with Aerosur's new master, the Bolivian government.   So, a shareholder's meeting has been convened for December 3, 2011.  Ostensibly, the meeting has been called to demand that Humberto Roca, as Aerosur's President, submit an accounting and explain the company's financial situation.  Of course, as already detailed here, Humberto Roca

cannot return to Bolivia and all involved know this.

55.     Upon information and belief, in his absence, Aerosur's shareholders will formally oust Humberto Roca from his role as Aerosur's president.  Defendant Sanzetenea, Humberto Roca's stepbrother and one-time confidant, will cast the deciding vote by virtue of the rights he now holds following the illegal conversion of Humberto Roca's shares which Sanzetenea held as custodian.

56.     In order to attempt to protect his interests, Humberto Roca gave a power of attorney to his son-in-law, Jorge Eduardo Ortiz Banzer, so that Ortiz could attend the shareholder's meeting on his behalf.    It is now clear that the Bolivian government has caught wind of Humberto Roca's plan to fight for what is rightfully his.

57.     So, on the morning of December 2, 2011, Ortiz received a phone call from a Bolivian prosecutor.   The prosecutor told him that he understood that Ortiz might be planning to attend the shareholder's meeting on December 3, 2011.   Ortiz was then told that it was not a good idea for him to attend the shareholder's meeting and that if he did so, he would be arrested.

58.     Needless to say there is no legitimate reason for a criminal prosecutor working for the Bolivian government to get involved in the inner workings of a supposedly private company.  However, as is now abundantly clear, the reason this occurred is that Bolivia has in fact expropriated Humberto Roca's shares in Aerosur, and does not want him to interfere in their control over the airline.

59.     In addition to illegally expropriating his ownership interest, upon information and belief, the shareholder's meeting will also serve as a forum to accuse Humberto Roca of corporate mismanagement.   The meeting will end with a demand that Humberto Roca be extradited from the United States where he is currently seeking political asylum.

60.     To finally silence a vocal opponent, the Bolivian government will use the occasion of the Aerosur shareholder's meeting to hold a "final hearing" in Humberto Roca's criminal case.  Upon information and belief, the government will pile on the accusations of corporate mismanagement leveled at the shareholder's meeting to secure a conviction.  This will help the government disguise what is clearly an act of political repression as a prosecution for corporate malfeasance.

**COUNT I:**
**Arbitrary and Discriminatory**
**Expropriation in Violation of International Law**

61.     Plaintiff re-alleges paragraphs 1 through 60 as if fully set forth herein.

62.     The property expropriated from Humberto Roca is being taken by the Bolivian government for the sole commercial purpose of running Aerosur and obtaining commercial profit from this activity.

63.     Every day, Aerosur's planes travel to and from the United States and Bolivia.

64.     The agency or instrumentality that has control over these shares is engaged in commercial activity in the United States.

65.     Humberto Roca is entitled to receive full and just compensation for the expropriated assets.

66.     Notwithstanding, Humberto Roca has not been fully compensated for the expropriated assets.

67.     The failure to pay Humberto Roca the full and just compensation for the expropriated shares, at a time when Roca was stripped of all his citizenship rights, constitutes a violation of international law.

16

WHEREFORE, Plaintiff Humberto Antonio Roca Leigue demands judgment against Defendants Estado Plurinacional de Bolivia f/k/a La República de Bolivia, Compañía Boliviana de Transporte Aereo, a/k/a Aerosur, Sergio Sanzetenea, David Añez Ali, and Alvaro Garcia Linera, for compensatory damages suffered in an amount to be proven at trial, and for such other relief as the Court deems just and proper.

## COUNT II:
## Civil Conspiracy

68.     Plaintiff re-alleges paragraphs 1 through 60 as if fully set forth herein.

69.     Defendants entered into an agreement with one another, the purpose of which was to unlawfully deprive Humberto Roca of his assets without full and just compensation.

70.     In furtherance of the conspiracy, the Bolivian Government filed two criminal charges against Humberto Roca and has created a scheme along with the other Defendants to deprive Humberto Roca of his 51% ownership interest in Aerosur.

71.     As a result of the Defendants' conspiracy to usurp Humberto Roca's property without providing just compensation, Humberto Roca has been injured.

WHEREFORE, Plaintiff Humberto Antonio Roca Leigue demands judgment against Defendants Estado Plurinacional de Bolivia f/k/a La República de Bolivia, Compañía Boliviana de Transporte Aereo, a/k/a Aerosur, Sergio Sanzetenea, David Añez Ali, and Alvaro Garcia Linera, for compensatory damages suffered in an amount to be proven at trial, and for such other relief as the Court deems just and proper.

## COUNT III:
## Replevin

72.     Plaintiff re-alleges paragraphs 1 through 60 as if fully set forth herein.

73.     Humberto Roca is the lawful owner of a 51% ownership interest in Defendant Aerosur as evidenced by certain stock certificates currently under the custody and control of Defendant Sanzetenea.

74.     The property is currently wrongfully detained by Defendants because they refuse to return same to Humberto Roca when he has requested it.

75.      Humberto Roca's shares have not been taken for any tax, assessment, or fine pursuant to law.

76.     Humberto Roca's shares have not been taken under an execution or attachment against Plaintiff's property.

WHEREFORE, Plaintiff Humberto Antonio Roca Leigue demands judgment against Defendants Estado Plurinacional de Bolivia f/k/a La República de Bolivia, Compañía Boliviana de Transporte Aereo, a/k/a Aerosur, Sergio Sanzetenea, David Añez Ali, and Alvaro Garcia Linera, for possession of the property.

### COUNT IV:
### Breach Of Fiduciary Duty
### (against Sanzetenea and Anez)

77.     Plaintiff re-alleges paragraphs 1 through 60 as if fully set forth herein.

78.     Defendant Sanzetenea owes a fiduciary duty to Humberto Roca as trustee, and Añez owes a fiduciary duty to Roca as his attorney.

79.     Sanzetenea and Añez breached that duty by conspiring with the other Defendants and by not returning Humberto Roca's 51% shares in Aerosur as he requested them.

80.     As a result of Sanzetenea's and Añez's breach, Humberto Roca has been injured.

WHEREFORE, Plaintiff Humberto Antonio Roca Leigue demands judgment against Defendants Sergio Sanzetenea and David Añez Ali for damages suffered and for such other relief as the Court deems just and proper.

## COUNT V
## Injunctive Relief

81.    Plaintiff re-alleges paragraphs 1 through 60 as if fully set forth herein.

82.    Plaintiff has a likelihood of success on the merits.  Plaintiff is the rightful owner of 51% of the shares of Aerosur, which are in the custody of Santezenea pursuant to an agreement between the two.   Plaintiff signed an agreement with Sanzetenea memorializing Roca's ownership of those shares in which Sanzetenea agreed to turn over the shares upon demand. However, Sanzetenea refuses to return the shares to Humberto Roca despite demand.

83.    Plaintiff will suffer irreparable harm if an injunction is not entered.  Plaintiff will lose his shares of stock which are unique.

84.    Plaintiff has no adequate remedy at law.   Monetary damages alone will not compensate Plaintiff for the loss of his unique ownership interest in Defendant Aerosur.

85.    Plaintiff's interest to be protected outweighs any potential or alleged harm to Defendants if injunctive relief is granted, because Defendants do not have the lawful right to possess or control Plaintiff's shares.

86.    The public interest will be served because sound public policy is served by this injunction.  Defendants have acted in the utmost bad faith, abusing the trust placed in them, and as to the other defendants, in complete disregard for the rights of the Plaintiff by seeking to appropriate Plaintiff's property and assets for themselves without lawful cause or due process of law.

WHEREFORE, Plaintiff Humberto Antonio Roca Leigue requests entry of an injunction against Defendants Estado Plurinacional de Bolivia f/k/a La República de Bolivia, Compañía Boliviana de Transporte Aereo, a/k/a Aerosur, Sergio Sanzetenea, David Añez Ali and Alvaro Garcia Linera, preventing them from removing Plaintiff as President of Aerosur and from selling or otherwise conveying Plaintiff's 51% shares in Aerosur, and any other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff Humberto Antonio Roca Leigue demands a trial by jury for all matters so triable.

DATE:  December 2, 2011

 s/Michael Diaz, Jr.
Michael Diaz, Jr. (Florida Bar No. 606774)
Attorney E-mail Address:  mdiaz@diazreus.com
Carlos F. Gonzalez (Florida Bar No. 0494631)
Attorney E-mail Address: cgonzalez@diazreus.com
Marta Colomar Garcia (Florida Bar No. 40869)
Attorney E-mail Address: mcolomar@diazreus.com
DIAZ REUS & TARG, LLP
100 Southeast Second Street
2600 Miami Tower
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile:  (305) 375-8050

*Counsel for Plaintiff*

## **<u>VERIFICATION</u>**

I, Humberto Antonio Roca Leigue, am a plaintiff in the above-styled cause and as such, I have knowledge of the allegations contained in the Complaint and to the best my knowledge, information, and belief, declare under penalty of perjury under the laws of the Untied States of America that the foregoing is true and correct.

November __, 2011

_____
Humberto Roca

21

## **VERIFICATION**

I, Humberto Antonio Roca Leigue, am a plaintiff in the above-styled cause and as such, I have knowledge of the allegations contained in the Complaint and to the best my knowledge, information, and belief, declare under penalty of perjury under the laws of the Untied States of America that the foregoing is true and correct.

November 30 2011

_____
Humberto Roca